**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MITCHELL HARVEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 CV 6828 |
| v. | ) | |
| | ) | Judge James B. Zagel |
| WASTE MANAGEMENT OF | ) | Magistrate Judge Soat Brown |
| ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**HARVEY'S RESPONSE MEMORANDUM TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Mitchell Harvey, by and through his attorneys, Law Offices of

Jerome F. Marconi, pursuant to Federal Rule of Civil Procedure 56 and L.R. 56.1, and herein

submits his Memorandum of Law in response to Defendant's Motion for Summary Judgment.  In

support thereof, Harvey responds as follows:

I.    Defendant's Analysis of the Facts

In its Memorandum In Support of Summary Judgment ("Deft. Memo"), Waste Management

initially  discusses its various policies.  (Deft. Memo p. 2-3)  Harvey does not take issue with the

Attendance Policy or the FMLA but is challenging Waste Management's application of its policies

to Harvey's situation.  Harvey's lawsuit alleges: 1) Waste Management interfered with Harvey's

rights under the Family Medical Leave Act, and 2) Waste Management retaliated against Harvey for

the exercise of his rights under the FMLA.

Defendant spends time arguing that Harvey had a "series of attendance problems" going back

to 2002.  (Deft. Memo p. 3)  Any warning notices Harvey received prior to 2007 are completely

irrelevant to this case.  There is no evidence that Harvey's prior discipline was used in Sundstrom's

decision to terminate Harvey's employment.  Sundstrom's testimony was clear that he terminated Harvey's employment because Harvey accumulated 12 points in the current rolling nine month period.  There is no evidence that any purported "attendance problems" prior to 2008 was used as a basis for  Harvey's termination.  The issue is whether Waste Management, pursuant to its Attendance Policy,  used FMLA protected absences as a basis to terminate Harvey's employment?

A.    Prior FMLA leave

Harvey does not dispute that Waste Management approved Harvey's FMLA leave from February 12, 2008 to March 2, 2008.  (Deft. Memo p. 4)  For some reason, Waste Management asserts that the genesis for this leave was the result of a vehicle accident.  However, there is no evidence to suggest that a vehicle accident led to Harvey's request for FMLA leave.  Harvey testified that he suffered from irritable bowel syndrome and abdominal pain requiring hospitalization.  (Pl. 56.1 ¶ 11)  Dr. Tomlin testified that at the time he approved Harvey's leave of absence, Harvey suffered from gastroesophageal reflux disease for which Dr. Tomlin prescribed Omeprazole.  (Pl. 56.1 ¶ 45, 50) The reason for Harvey's prior FMLA leave is marginally relevant to the analysis of whether Waste Management interfered with exercise of Harvey's FMLA rights.

B.    February 13, 2008 Absence

There is no dispute that Waste Management's proffered reason for terminating Harvey's employment was for violation of Waste Management's Attendance Policy.  The question here is whether Waste Management used FMLA protected activity to arrive at the 12 points.  Waste Management's calculation of the points assessed against Harvey, which is contained in a footnote (Deft. Memo p. 4), is not supported by Waste Management's business records.  Waste Management asserts that the March 7, 2008 Employee Notice of Disciplinary Action was for attendance points

2

Harvey accumulated prior to his medical leave.  (Deft. Memo p. 4)  However, there is nothing in the

March 7 Notice which describes the specific days or "unexcused absences" used against Harvey.

In its footnote, Waste Management attempts to revise the calculations it made at the time of Harvey's

termination to avoid counting the February 13, 2008 absence against Harvey.  However, in order to

arrive at the calculation noted in this footnote, Waste Management must ignore its own business

records.

Waste Management acknowledges that an employee has the right to know how many points

have been assessed against him/her pursuant to the Attendance Policy.  (Deft. Memo p. 3)  The Final

Warning Notice given to Harvey (incorrectly dated September 5, 2007), references the December

14, 2007 absence.  This Final Warning Notice clearly states that Harvey was at "9 points for your

attendance."  (Pl. 56.1 ¶ 37)  Presuming this point total is accurate, it does not coincide with Waste

Management's calculation contained in its footnote.  If the calculations in the footnote are accurate,

the Final Warning Notice should have stated that Harvey was at 10 points, not 9 points.  The only

absences after December 14, 2007 were February 5, February 13 and March 18, 2008.  These were

the 10th, 11th and 12th "unexcused" absences assessed against Harvey which led to Harvey's

discharge.

C.    <u>March 18, 2008 absence and notice to Waste Management</u>

There is no dispute that Waste Management used the March 18, 2008 absence as Harvey's

12th point under the Attendance Policy.  Accordingly, Sundstrom terminated Harvey's employment

pursuant to the Attendance Policy.  Waste Management's version of the conversation between

Harvey and Sundstrom (Deft. Memo p. 5) completely distorts and ignores facts adduced during

discovery.  Waste Management must misrepresent the content of the conversation between Harvey

3

and Sundstrom because it is the only way it can mold its defense to fit within the line of cases cited

in its Argument section.  Waste Management realizes that once it receives sufficient information that

Harvey's illness could be a FMLA-qualifying illness, it must do more than terminate Harvey's

employment.  Since this evidence is important, Harvey will cite Sundstrom's testimony:

> Q:    All right.  When you were in the room with Mitch Harvey, what did Mitch tell you?
> A:    That he felt sick.
>
> Q:    Okay.  Did he look sick to you?
> A:    Yes.
>
> Q:    And at that point, had you known that Mitch was off earlier that month on FMLA leave?
> A:    I'm sorry, repeat the question.
>
> Q:    When Mitch told you that he felt sick and he looked sick, at that time did you know that Mitch had been on the FMLA leave earlier in the month?  I think he got off it on March 2.
> A:    I did know he was on FMLA.
>
> Q:    What did you notice about Mitch that made you think that he was sick?
> A:    He appeared to have a hard time just standing up.
>
> Q:    And obviously he told you he was sick, correct?
> A:    That's correct.
>
> Q:    Did he go into any details?
> A:    I don't recall exactly, something to the effect that his stomach was upset.
>
> Q:    What did you do at that point?
> A:    Just explained to him that I didn't feel that he appeared that he'd be able to do his job and requested that, you know, if -- if he needed to, he needed to leave.
>
> Q:    Mitch was a driver at that point; is that correct?
> A:    Yes.
>
> Q:    Did you have some concerns about safety in that Mitch would be operating a garbage truck?
> A:    Yes.   (Sundstrom dep. pp. 41-42)

According to Harvey, he told Sundstrom that Harvey was suffering from the same problem as before but it was now worse. He also told Sundstrom that he was in no shape to do anything. Harvey also corroborated Sundstrom's observations that he could hardly stand up. (Pl. 56.1 ¶ 17, 18)

Assuming *arguendo* that Waste Management accurately represented that Harvey only told Sundstrom he had an upset stomach, this still does not change the outcome of this case since the following facts are not in dispute: Harvey met with Sundstrom prior to leaving work on March 18 at which time Sundstrom observed that Harvey could barely stand up; Sundstrom knew that Harvey was too sick to operate a truck; Sundstrom knew that Harvey left early to go the hospital as a result of Harvey's complaints; Sundstrom was aware that Harvey had been admitted into the hospital; Rod Smith was aware that Harvey was in the hospital and wrote a note containing the name of the hospital, its phone number and Harvey's room number; John Luby, Harvey's current supervisor, testified he was aware Harvey was in the hospital; Harvey was in the hospital on March 19, 2008 when Sundstrom called Harvey to terminate Harvey's employment; and Sundstrom made the decision to terminate Harvey's employment after consulting with Human Resources and discussing Harvey's prior FMLA leave.

II.     Defendant's Argument

A.      Lack of Notice

Defendant argues that Harvey cannot prevail on his FMLA interference claim because Harvey did not provide sufficient notice to Waste Management and has not shown that Waste Management denied Harvey benefits to which he was entitled. (Deft. Memo p. 9) Waste Management relies upon the Department of Labor regulations in its argument that Harvey did not provide sufficient notice.

Specifically, Waste Management cites to *29 C.F.R. §825.302(d)*.  (Deft. Memo p. 10)  Waste Management conveniently cites only part of section (d) in its brief.  This is understandable in light of the fact that when section (d) is cited in its entirety, it decimates Waste Management's argument that it terminated Harvey because Harvey did not contact TOPS.   *29 C.F.R. §825.302 (d)* states:

> "An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. ***However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.*** (Emphasis added)"

The cases cited by Waste Management in support of its notice argument are easily distinguishable.  In <u>Phillips v. Quebecor World RAI, Inc.</u>, 450 F.3d 308 (7th Cir. 2006), summary judgment was entered in defendant's favor because plaintiff failed to provide sufficient notice of a serious health condition.  The court found that "[t]he only information available to Quebecor at the relevant time consisted of the form Phillips submitted, stating that she had been seen at the health center, and her explanation that she was leaving because she was 'sick.'" <u>Id</u>. at 311.  The court held that plaintiff's failure to inform the defendant of the nature of her medical problem did not supply defendant with sufficient notice under the FMLA.

The facts in this case are much different.  Harvey was on FMLA leave just weeks before his March 18, 2008 termination.  The decisionmaker, Sundstrom, knew that Harvey had just been on FMLA leave.  Harvey testified that he spoke personally to Sundstrom when he arrived at work on

6

March 18, 2008.  Harvey told Sundstrom that he was suffering from the same problem that he was

suffering from before but the condition worsened.  (Pl. 56.1 ¶ 37)  In addition, the following facts

were borne out in discovery:  Harvey told Sundstrom that he needed to go to the hospital;  Sundstrom

personally observed that Harvey was ill, could not do his job and was having a hard time standing

up; Sundstrom knew Harvey was admitted into the hospital;  Jerrie Hanus and Harvey called Waste

Management to report that Harvey was in the hospital and provided the name of the hospital and the

room, bed and telephone numbers; Sundstrom called the hospital on March 19, 2008 to inform

Harvey his employment was terminated for accumulating 12 points; Sundstrom used the February

13, 2008 absence (while Harvey was on FMLA leave) as an "unexcused absence" to accumulate the

12 points.

The Phillips court made it clear that a "FMLA-qualifying leave may not be counted against

an employee under an employer's "no fault" attendance policy. *29 C.F.R. § 825.220(c)*" Id. at 310.

This is exactly what Waste Management did.  Certainly, Waste Management cannot claim lack of

notice for the February 13, 2008 absence since it had approved Harvey's FMLA leave.  Additionally,

Harvey provided sufficient notice to Waste Management for the March 18, 2008 absence by advising

Waste Management of his illness and the fact he was admitted into the hospital.  This is not a case

wherein the employee merely told the employer that he was "sick" and failed to appear for work.

In Collins v. HTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001), the employee called in sick

for two days by merely informing her employer that she was "sick."  The court held that "a reference

to being 'sick' not only withheld important information from the employer but likely threw it off the

scent.  Certainly it did not suggest to the employer that the medical condition might be serious or that

the FMLA otherwise could be applicable."  Id. at 1009.  As previously argued, Harvey not only

provided significantly more information than he was "sick", he also notified Waste Management that he had to be admitted into the hospital. This made it easier for Sundstrom to locate Harvey so that Sundstrom could terminate Harvey's employment while Harvey lay in a hospital bed.

Waste Management also cites Phillips v. JP Morgan Chase, No. 06 C 3747, 2007 U.S. Dist. LEXIS 31608 (N.D. Ill. April 30, 2007) in support of its notice argument. Harvey is perplexed as to how the Phillips case supports Waste Management's argument. The District Court relied upon Burnett v. LFW, Inc. 472 F.3d 471, 477 (7th Cir. 2006) in her analysis of the notice issue. In doing so, the court recognized the following legal standards:

"The FMLA's notice requirements are not onerous... An employee must give notice of the need for FMLA leave 30 days in advance or 'as soon as practicable under the facts and circumstances of the particular case'... If the need for FMLA leave is not foreseeable, it is expected that an employee will give notice within no more than one or two working days of learning of the need for leave. An employee need not mention the FMLA in her leave request... The employee need only show that she *likely* has an FMLA-qualifying condition... Her duty is to place her employer on notice of a probable basis for FMLA leave... That is enough to trigger the employer's duty to request additional information from the employee's doctor to confirm her entitlement. .." Phillips at 12.

The court concluded that Phillip's voicemail message to her supervisor, that she was "sick" and not coming to work, was insufficient to place the employer on notice of an FMLA qualifying event. The court cited the same cases being cited by Waste Management in this case which hold that an employee's bare assertion that he/she is "sick" is not enough to trigger the employer's duty to request additional information from his/her doctor. Id. at 13-14. Certainly, Sundstrom knew that

Harvey had a *likely* FMLA-qualifying condition as he knew that Harvey had been admitted into a hospital before he made the decision to terminate Harvey's employment.

This court may also use the reasoning found in Byrne v. Avon Products, Inc., 328 F.3d 379 (7th Cir. 2003). In analyzing the notice requirement, the court stated, "It is not beyond the bounds of reasonableness to treat a dramatic change in behavior as notice of a medical problem... A sudden change may supply notice even if the employee is lucid: someone who breaks an arm obviously requires leave. It is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits." Id. at 381-382. Harvey has presented testimony establishing that Harvey had a sudden change of behavior and physical appearance. This sudden change led to Harvey's in-patient hospitalization. These facts are sufficient for the trier of fact to conclude that Waste Management had notice of Harvey's FMLA-qualifying condition.

B.    Waste Management's TOPS policy

Waste Management attempts to avoid its responsibility in this case by arguing that Harvey did not follow internal procedures because Harvey did not call TOPS after showing up for work and advising his supervisors he was in the hospital . Waste Management relies upon Gilliam v. United Parcel Serv., Inc., 233 F.3d 969 (7th Cir. 2000) for it failure to follow internal procedures argument. In Gilliam, the employee was terminated for abandoning his job. Although the employee notified his supervisor, at the last minute, that he was taking Friday off to attend the birth of his child, he never followed up the next week to request additional time off from work. Id. at 970. The court recognized the FMLA does not provide for leave on short notice when longer notice readily could

have been given.  Nor  does it authorize employees on leave to keep their employers in the dark about when they will return to work.  Id. at 971.

Assuming Harvey did not technically follow Waste Management's TOPS policy (which Harvey disputes since he appeared for work and spoke directly to his supervisors), Waste Management's argument fails because it is contrary to the federal regulations governing the Family Medical Leave Act.  There is no dispute in this case that Waste Management terminated Harvey's employment while Harvey lay in a hospital bed.  On March 18, 2008, Harvey personally to his supervisor that he was too ill to work and needed to go to the hospital.  Waste Management's argument has no merit based upon the language contained in *29 C.F.R. §825.302 (d)* which prohibits an employer from disallowing or delaying an employee's FMLA leave if the employee gives timely verbal or other notice.  Since Harvey gave timely, verbal notice, Waste Management cannot lawfully deny Harvey's request to treat Harvey's March 18, 2008 absence as FMLA qualifying.  As previously argued, Waste Management also used the February 13, 2008 absence against Harvey.

C.    Waste Management's argument that it would have terminated Harvey anyway

Waste Management argues that an employer can terminate an employee for reasons other than taking FMLA leave.  (Deft. Memo p. 13)  If the employer would have terminated the employee for reasons other than taking FMLA leave, the employee does not have to be restored to his/her former position.  However, this is not what this case is about.  Waste Management disciplined Harvey for leaving work early on March 18, 2008 to go to the hospital and for being absent on February 13, 2008 when Harvey was on an approved FMLA leave.  There are no valid reasons for Harvey's termination in this case.  This case does not fall within the line of cases wherein the employee was terminated because he/she failed to appear for work and did not contact his/her

10

supervisor for several days. Not only did Harvey appear for work, he made numerous calls to his former and current supervisors and instructed his girlfriend to contact Waste Management to inform Waste Management that he was in the hospital. There is no dispute that Waste Management knew that Harvey was in the hospital.

Waste Management argues that Harvey must establish that he was entitled to FMLA benefits on March 18, 2008. Before addressing defendant's argument with regard to the March 18, 2008 absence, Harvey submits that Harvey was clearly entitled to FMLA benefits on February 13, 2008 because Harvey was on FMLA leave. Waste Management used this FMLA-protected day to discipline Harvey. Hence, Waste Management interfered with Harvey's rights under the FMLA.

As for March 18, 2008 absence, Harvey has already established that he gave sufficient notice under the FMLA to place Waste Management on notice of Harvey's FMLA qualifying-condition. Instead of requesting additional information from Harvey (which was easily obtainable since Harvey was laying in the hospital), Waste Management terminated Harvey's employment. This was a deliberate decision since Sundstrom contacted Human Resources because he knew that Harvey had recently been on FMLA leave.

Defendant's reliance on Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002)is misplaced. In Lewis, the employee suffered an asthma attack at work and was hospitalized. A couple days later, plaintiff provided her supervisor with the slip from her doctor verifying she was in the hospital. Unlike the present case, the employer designated the time that the employee was in the hospital as FMLA leave! Id. at 708. The following week, the plaintiff had scheduled vacation time with a return date of December 29, 1997. Id. In violation of the Union Agreement and

Attendance Policy, the plaintiff did not return to work after the expiration of her vacation and did not call the company to report that she still needed time off from work. Id. The employer terminated the plaintiff's employment because she did not call in for three consecutive work days. Id. at 709.

The Lewis court relied upon the court's rationale in Gilliam v. United Parcel Serv., Inc., 233 F.3d 969 (7th Cir. 2000) that employees should not keep employers "in the dark" as to when he/she is to return to work. Id. at 710. The court noted that the plaintiff failed to comply with the collective bargaining agreement by not contacting her supervisor no later than the beginning of the third day of leave in order to tell the supervisor how much more leave would be required. Id. Accordingly, the court held that plaintiff did not give sufficient notice under the FMLA. Similarly, the employee in Bones v. Honeywell International, Inc., 223 F. Supp 2nd 1203 (D. Kan. 2002) did not show up for work or call to report her absences. These cases are much different than the present case as Harvey appeared for work and informed all his supervisors that he had been admitted into the hospital.

D.    Harvey's Retaliation claim

Waste Management makes a tactical decision not to argue that Harvey failed to establish a claim of retaliation using the direct method of proof. (Deft. Memo p. 15) Instead, Waste Management spends the entire time in its argument analyzing Harvey's retaliation claim using the indirect method. (Deft. Memo pp. 15-17) Harvey has been very clear throughout this litigation that Waste Management used two FMLA-protected days against Harvey to terminate his employment. It is understandable that Waste Management avoided discussing the direct method of proof since the direct method dooms Waste Management's defense on Harvey's retaliation claim.

In Lewis v. School District #70, 523 F.3d 730 (7th Cir. 2008), the Seventh Circuit discussed direct evidence in the context of a FMLA case. In its decision to replace Lewis as bookkeeper, the

12

employer provided Lewis with a letter which stated, "It was determined that you miss too much work to meet the essential functions of your present assignment." Id. at 742. Also, a supervisor told Lewis that the board of education decided to demote Lewis because of absenteeism. Id. The Seventh Circuit held that these statements were direct evidence of an impermissible motivation for the adverse job action. Id.

This Court analyzed a FMLA case using the direct method as described in the Lewis case. In Jordan v. Beltway Rail Company of Chicago, 2009 U.S. Dist. Lexis 16926 (N.D. Ill 2009), the direct method of proof to analyze Jordan's retaliation claim under the FMLA. Under the direct method, the plaintiff must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. Jordan at 23. In this case, there is no dispute that 1) Harvey engaged in protected activity on February 13 and March 18, 2008; 2) Waste Management terminated Harvey's employment, i.e. material adverse action; and 3) there is a direct causal connection between the FMLA-protected days and Harvey's termination. According the Waste Management's business records and the testimony of the Waste Management supervisors, Waste Management terminated Harvey because he accumulated 12 "unexcused" absences. Waste Management's business records reveal that the March 18 and February 13, 2008 absences were used to arrive at the 12 point threshold under the Attendance Policy. But for using these two days, Harvey would not have been terminated according to the Attendance Policy. This is evidence of retaliation under the direct method of proof.

There is additional evidence of retaliation beside the fact Waste Management used FMLA-protected days against Harvey. It is undisputed that the decisionmaker, Sundstrom, knew that Harvey recently returned from FMLA leave. It was Sundstrom's knowledge of Harvey's prior

FMLA leave which caused Sundstrom to contact Human Resources before terminating Harvey's employment. It is interesting that Sundstrom made no attempt to contact TOPS (a supervisor may contact TOPS on behalf of an employee) but made sure he contacted Human Resources to ratify his decision to terminate Harvey's employment. Harvey submits that this is very strong evidence from which the trier of fact can infer that Sundstrom hurried to terminate Harvey's employment before Harvey could get back on his feet again to submit the FMLA paperwork to TOPS. As Judge Easterbrook pointed out in Byrne, "... no employer would be allowed to say "I fired this stricken person for shirking on company time, and by the time a physician arrived and told me why the worker was unconscious it was too late to claim FMLA leave." Byrne at 381.

E.      Waste Management's Motion for Summary Judgment on Damages

        Waste Management briefly argues that it is entitled to summary judgment on Harvey's claim for damages because Harvey suffers from a "deteriorative back condition" which is permanent. (Deft. Memo p. 17) This is a very curious argument in light of the fact Waste Management has argued that Harvey's physician, Dr. Jeffrey Tomlin, "fully released" Harvey back to work on March 3, 2008. (Deft. Memo p. 4) Waste Management further argues that "Plaintiff had been fully released to work several weeks prior and had been actively working *without any problems since his leave*. (Deft. Memo p. 5) As Waste Management points out, there is no evidence in the record that Harvey was unable to work as a result of back problems. Waste Management has not elicited a scintilla of evidence that Harvey could not perform the function of his job due to any back problems. The only evidence which Waste Management could come up with is that Harvey complained of a pinched nerve in his back after his termination. There was never an attempt to determine if Harvey could perform the functions of his job or whether Waste Management could accommodate any restrictions.

14

In examining the evidence pertaining to Harvey's ability to work and his back condition, the court must closely examine the evidence.  First, Harvey testified as follows at his deposition:

|  | Q: | So as of today, you are fully released to work full-time? |
|---|---|---|
| Mr. Harvey | A: | Absolutely. |

|  | Q: | And you'd be able to perform the job at Waste Management? |
|---|---|---|
| Mr. Harvey | A: | Absolutely. |

|  | Q: | Do you receive ongoing treatment for your Addison's disease? |
|---|---|---|
| Mr. Harvey | A: | Yes. |

|  | Q: | And what does that treatment involve? |
|---|---|---|
| Mr. Harvey | A: | Seeing the specialist every three months just to see how I'm at.  And every six months to have blood work. |

The bottom line is that Harvey's degenerative back condition did not interfere with his ability to perform his job before his termination and does not prohibit Harvey from working at the present time.   Dr. Grindstaff was clear that a degenerative back condition is not "cured" by medication or physical therapy.  However, physical therapy and medication can alleviate the symptoms associated with degenerative disc disease.  (Grindstaff dep. p. 33, line 7)  Also, a pinched nerve can resolve over time.  (Grindstaff dep. p. 30, line 6)  Further, a person with degenerative disc disease can exhibit no symptoms. (Grindstaff dep. p. 30, line 13) In fact, Dr. Grindstaff opined that degenerative disc disease in persons over the age of 30 is "common."  (Grindstaff dep. p. 30, line 13)

When asked about his opinion as to whether Harvey could perform his duties, Dr. Grindstaff testified that he did not render an opinion as to whether Harvey could perform certain tasks. (Grindstaff dep. p. 21, line 21)  Dr. Grindstaff never ordered or performed a functional capacity evaluation on Harvey.  Dr. Grindstaff explained that a functional capacity evaluation is performed to see what a person is capable of doing.  (Grindstaff dep. p. 28, line 1)  Dr. Grindstaff's limited

treatment of Harvey did not allow him to formulate an opinion as to whether Harvey was able to perform his job at Waste Management.  In sum, there is no evidence in the record to support the conclusion that Harvey is permanently disabled from performing his job at Waste Management.

For the above stated reasons, Harvey requests that this Honorable Court deny Waste Management's Motion for Summary Judgment.

Respectfully submitted,

s/ *Jerome F. Marconi*
   Jerome F. Marconi

Jerome F. Marconi
Law Offices of Jerome F. Marconi
555 W. Jackson Suite 700
Chicago, Illinois 60661
(312) 930-5645
Atty No. 6194239