IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MITCHELL HARVEY ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 CV 6828 |
| v. ) | |
| ) | Judge James B. Zagel |
| WASTE MANAGEMENT OF ) | Magistrate Judge Geraldine Soat Brown |
| ILLINOIS, INC., ) | |
| ) | |
| Defendant. ) | |

### HARVEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, Mitchell Harvey, by and through his attorneys, Law Offices of Jerome F. Marconi, pursuant to Federal Rule of Civil Procedure 56 and L.R. 56.1(a)(2), and herein submits his Memorandum of Law in Support of Motion for Summary Judgment on Counts I and II of Harvey's Complaint at Law. In support thereof, Harvey states as follows:

### FACTS

On December 1, 2008, the plaintiff, Mitchell Harvey ("Harvey"), filed his Complaint at Law with the Clerk of the Court of the Northern District of Illinois. Count I alleges that the Waste Management of Illinois ("Waste Management") violated the Family Medical Leave Act ("FMLA") by "knowingly denying Harvey's request to exercise his right to take a medical leave pursuant to the leave provisions of the FMLA." Count II alleges that the Waste Management retaliated against Harvey for exercising his rights pursuant to 29 U.S.C. § 2615(a)(1) of the FMLA. Waste Management, in its Answer and Affirmative Defenses to Plaintiff's Complaint at Law, admitted that Harvey was employed for at least 12 months and worked in excess of 1,250 hours during the 12

month period prior to Harvey's termination. (Pltf. 56.1 ¶ 4)  Waste Management is an "employer" for purposes of the FMLA.  (Pltf. 56.1 ¶ 4)

Harvey's employment with Waste Management

Harvey began working for Waste Management in October, 1994.  At the time of his termination, Harvey was employed as a residential driver. (Pltf. 56.1 ¶ 3)  Harvey's immediate route supervisor was John Luby ("Luby").  Harvey's former route supervisor was Rod Smith ("Smith").  (Pltf. 56.1 ¶ 5, 7)  The District Operations Manager was Tom Sundstrom ("Sundstrom").  (Pltf. 56.1 ¶ 6)  Sundstrom directly supervised Luby.  (Pltf. 56.1 ¶ 5)  Waste Management has an Attendance Policy which specifies certain discipline for unexcused absences.  When an employee accrues 12 points in a rolling nine month period, the employee is discharged.  (Pltf. 56.1 ¶ 8, 10)

Harvey's illness and notice of serious medical condition

In February, 2008 Harvey was suffering from a medical condition which required ongoing care from a doctor.  Harvey's regular physician was Dr. Jeffrey Tomlin.  (Pltf. 56.1 ¶ 43)  Dr. Tomlin provided a note excusing Harvey from work on February 18, 2008 for abdominal pain. (Pltf. 56.1 ¶ 44)  As of February 18, 2008, Dr. Tomlin had not yet made a formal diagnosis of Harvey's condition. Dr. Tomlin subsequently diagnosed Harvey with "bile reflux gastritis."  (Pltf. 56.1 ¶ 44, 45)  Dr. Tomlin saw Harvey on February 26, 2008.  Dr. Tomlin recalled filling out paperwork for FMLA leave on Harvey's behalf.  Dr. Tomlin completed the FMLA form on February 26, 2008 and estimated that Harvey's return to work date would be March 3, 2008.  (Pltf. 56.1 ¶ 47)

Dr. Tomlin continued to monitor Harvey's illness.  Dr. Tomlin explained that Harvey's symptoms began on February 5, 2008 and Harvey's first date of absence was February 13, 2008.  Dr. Tomlin wrote, "The patient was seen 2/12/08 for a 1-week history of abdominal pain with

bloating & heartburn - subsequent evaluation confirmed bile reflux gastritis." Based upon Harvey's illness and Dr. Tomlin's diagnosis, Harvey applied for FMLA leave.  (Pltf. 56.1 ¶ 50) Waste Management provided Harvey with a written confirmation that Harvey's FMLA leave was a continuous leave from February 12, 2008 to March 2, 2008 for a serious medical condition.  (Pltf. 56.1 ¶ 11, 14)

Harvey returned to work as scheduled on March 3, 2008.  Harvey explained that he still struggled  after returning to work.  (Pltf. 56.1 ¶ 18)  However, Harvey did not miss any work between March 3, 2008 and March 17, 2008.  (Pltf. 56.1 ¶ 39)  On March 18, 2008 Harvey drove to work at approximately 5:40 a.m..  Harvey felt very sick and could not perform the functions of his job.  (Pltf. 56.1 ¶ 16)  Harvey called his doctor twice on the way to work but no one answered the phone.  (Pltf. 56.1 ¶ 16)   Upon arriving at work, Harvey first spoke to Rod Smith, Harvey's former route supervisor.  Harvey asked Smith if he could speak directly to Sundstrom who was present at the facility. Harvey was able to meet with Sundstrom and explained that he was very sick and needed medical attention.  (Pltf. 56.1 ¶ 17)

Sundstrom acknowledged that he met personally with Harvey on the morning of March 18, 2008.  Sundstrom testified that Harvey told him that he was sick and needed medical attention.  Sundstrom testified that Harvey appeared to be sick and was unable to perform his job.  (Pltf. 56.1 ¶ 20, 21)  Sundstrom recalled telling Harvey the following:

> A: " [I] Just explained to him that I didn't feel that he appeared that he'd be able to do his job and requested that, you know, if -- if he needed to, he needed to leave.
>
> Q: Mitch was a driver at that point; is that correct?
>
> A: Yes.

> Q: Did you have some concerns about safety in that Mitch would be operating a garbage truck?
>
> A: Yes.

After Harvey spoke to Sundstrom, Harvey left the Waste Management facility and drove to the Northern Illinois Medical Center. Upon arrival, Harvey was examined by emergency room personnel. Immediately thereafter, Harvey was admitted as an inpatient in the hospital. Harvey remained in the hospital until March 20, 2008. (Pltf. 56.1 ¶ 28) After Harvey was admitted, he contacted his girlfriend, Jerrie Hanus ("Hanus"), and explained to her that he was just admitted into the hospital. Harvey asked Hanus to contact Waste Management to provide notice of his medical situation. (Pltf. 56.1 ¶ 25) Hanus contacted Waste Management and left messages for Harvey's supervisors with the hospital information. (Pltf. 56.1 ¶ 26)

On March 19, 2008, Hanus personally spoke to Smith about Harvey's hospitalization. Smith testified that Harvey told Smith that Harvey was in the hospital. Smith recognized a handwritten note contained in Harvey's personnel file. Smith testified that it "appeared" he may have written the note which contained the hospital name, Harvey's room number and bed number. (Pltf. 56.1 ¶ 22) Sundstrom testified that Luby told him that Harvey was in the hospital. (Pltf. 56.1 ¶ 24) Harvey had left a voicemail or Luby had spoken to Harvey's girlfriend. (Pltf. 56.1 ¶ 24) Smith also told Sundstrom that Harvey was in the hospital. (Pltf. 56.1 ¶ 23) Sundstrom knew that Harvey was in the hospital because Sundstrom contacted Harvey in the hospital to terminate Harvey's employment. (Pltf. 56.1 ¶ 30, 31, 42)

<u>Discipline</u>

On or about December 18, 2007, Waste Management gave Harvey a Final Warning Notice

stating that Harvey called in and informed a supervisor that he was not coming into work on December 14, 2007 due to illness. (Pltf. 56.1 ¶ 37) The Notice was incorrectly dated September 5, 2007. (Pltf. 56.1 ¶ 37) According to the Notice, Harvey was issued a warning and a one day suspension which Harvey served on December 24, 2007. The Warning Notice further stated that Harvey had accumulated 9 points pursuant to the attendance policy. (Pltf. 56.1 ¶ 37) There were no other days missed, or discipline imposed, in 2007.

On March 7, 2008, Waste Management issued Harvey an Employee Notice of Disciplinary Action signed by Sundstrom and Luby. (Pltf. 56.1 ¶ 38) Harvey was assessed additional points "due to recent unexcused absences from work." The Notice further stated, "This letter will be the last and final letter you will receive before being issued a termination letter. You now have a total of 11 points..." (Pltf. 56.1 ¶ 38) According to Harvey's 2008 Attendance Controller and Time Detail report, Harvey was assessed one point for unexcused absence on February 5, 2008 and one point for an unexcused absence on February 13, 2008. (Pltf. 56.1 ¶ 40) Harvey was on an FMLA approved leave of absence on February 13, 2008. (Pltf. 56.1 ¶ 11)

Harvey's employment was terminated effective March 18, 2008. Sundstrom and Luby prepared an Employee Notice of Disciplinary Action which assessed one point for an unexcused absence for March 18, 2008. Harvey did not sign this document because Sundstrom terminated Harvey over the telephone while Harvey was in the hospital. Since the March 18th absence was Harvey's 12th point, Sundstrom terminated Harvey's employment. Sundstrom made the termination decision with Luby and Human Resources. (Pltf. 56.1 ¶ 30, 31, 33) Sundstrom explained that he normally does not involve Human Resources but did so in Harvey's case because Harvey had just been on FMLA leave. (Pltf. 56.1 ¶ 33)

**ARGUMENT**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*; Anderson, 477 U.S. at 252; see also Celotex, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Schuster v. Lucent Techs., Inc., 327 F.3d 569, 573 (7th Cir. 2003).

I.   Interfence Claim

Count I of Harvey's Complaint at Law alleges that the Waste Management interfered with his rights to take a medical leave under the FMLA. The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve work-weeks of leave during each twelve-month period. *29 U.S.C. § 2612(a)(1)(D)*. The FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights. *Id. § 2615(a)(1)*. It also forbids an employer from retaliating against an employee

who exercises FMLA rights.  Burnett v. LFW, Inc. 472 F.3d 471, 477 (7th Cir. 2006).  Harvey has alleged both entitlement and retaliation theories of recovery.

In order to be entitled to judgment on the entitlement theory of recovery, Harvey must prove: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.  Harvey need not prove ill intent by his employer.  Burnett at 477.

The FMLA itself defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *29 U.S.C. § 2611(11)*. The Department of Labor regulations further define "serious health condition" as:

(1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity (for purposes of this section, defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom), or any subsequent treatment in connection with such inpatient care; or

(2) "Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following: (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or more times by a health care provider, by a nurse

or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider. *29 C.F.R. § 825.114(a)*.[1]

In this case, there is no dispute as to the first three elements cited by the Burnett court. Harvey is eligible for the FMLA's protections, Waste Management is an employer covered under the FMLA and Harvey was entitled to leave under the FMLA. The evidence is undisputed that Harvey suffered from a serious medical condition. At the very least, Harvey received in-patient care at a hospital the day Waste Management terminated his employment. Also, the record reveals that Harvey was on FMLA leave just prior to his termination and there was continuing treatment by a health care provider.

Harvey submits that he clearly satisfied the fourth and fifth prongs based upon Harvey's communications with Waste Management as well as Waste Management's knowledge of Harvey's serious medical condition. In Stevenson v. Hyre Elec. Co., 505 F.3d 720 (7th Cir. 2006), the seventh circuit recognized, "...the notice requirement is not demanding: The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave.; citing Aubuchon v. Knauf Fiberglass, GMBH, 359 F.3d 950, 951 (7th Cir. 2004)... Once that is done, then it becomes 'the

---

[1] The 2009 amendments to the regulations governing the FMLA define "Inpatient care" as an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care. 29 C.R.R. 825.114. Plaintiff has cited to the pre-2009 regulations in his brief.

employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement.'" Id. at 724-725.

The Burnett court likewise discussed the notice requirements under the FMLA. The court recognized that the notice requirements of the FMLA are not onerous. An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions. "Indeed, 'the employee can be completely ignorant of the benefits conferred by the Act . . . .' citing Stoops v. One Call Commc'ns., 141 F.3d 309, 312 (7th Cir. 1998). The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition. Burnett v. LFW, Inc. 472 F.3d 471, 478-479 (7th Cir. 2006).

This court may also use the reasoning found in Byrne v. Avon Products, Inc., 328 F.3d 379 (7th Cir. 2003). In analyzing the notice requirement, the court stated, "It is not beyond the bounds of reasonableness to treat a dramatic change in behavior as notice of a medical problem... A sudden change may supply notice even if the employee is lucid: someone who breaks an arm obviously requires leave. It is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits." Id. at 381-382.

In this case, Harvey provided legally sufficient notice to Waste Management. Sundstrom knew that Harvey had been on FMLA leave just a couple weeks prior to getting sick. Sundstrom, who made the decision to terminate Harvey, personally observed that Harvey could barely stand and could not perform his job on March 18, 2008. Sundstrom testified that he knew Harvey was in the hospital and, in fact, called Harvey at the hospital to terminate Harvey's employment. Harvey and his girlfriend personally called Waste Management the day Harvey was admitted into the hospital. There is even a handwritten note in Waste Management's files with the Harvey's name, the

hospital's telephone number as well as the room and bed numbers. Certainly, Waste Management had more than "probable cause" to believe that Harvey suffered from a serious medical condition which was a "likely" FMLA qualifying condition. Rather than request additional information, as mandated by law, Sundstrom terminated Harvey's employment. Based on the uncontested evidence pertaining to the March 18th absence and termination, judgment should be entered as a matter of law on Harvey's interference claim against Waste Management.

There is additional evidence that Waste Management interfered with Harvey's FMLA rights. There is direct evidence that Waste Management disciplined Harvey for an "unexcused absence" which occurred during the period Harvey was on FMLA leave. The FMLA form completed by Waste Management documented the fact that Harvey's prior FMLA leave was from February 12, 2008 to March 2, 2008. Harvey's illness was confirmed by Dr. Tomlin. Despite the FMLA approved leave, Waste Management penalized Harvey for one unexcused absence for February 13, 2008. Both Harvey's Attendance Controller and the Time Detail both document that Harvey received one point for an unexcused absence on February 13. These time records are corroborated by the discipline imposed by Waste Management.

Working backward from the 12th point assessed on March 18 (Harvey's termination date), Harvey received a Employee Notice of Disciplinary Action on March 7 which documented that Harvey had 11 points pursuant to Waste Management's attendance policy. Since Harvey had not missed any work after returning from FMLA leave, the points assessed were for unexcused absences occurring prior to March 2, 2008. The disciplinary action immediately preceding the March 7 notice was issued to Harvey on or about December 14, 2007. This Final Warning Notice was incorrectly dated September 5, 2007 but referenced an absence that occurred on December 14, 2007. The

document confirms that Harvey had 9 points pursuant to the Attendance Policy and recorded a one day suspension and warning.

Harvey was absent two days between December 14, 2007 (9th point) and the March 7, 2008 Notice (11th point). Those days were February 5 and February 13, 2008. These "unexcused" absences are documented in the Attendance Controller and Time Detail. Hence, the undisputed documentary evidence establishes that the following points were assessed against Harvey: December 14 (9th point), February 5, 2008 (10th point), February 13, 2008 (11th point) and March 18, 2008 (12th point). Waste Management's use of February 13, 2008 as an unexcused absence against Harvey is direct evidence of an interference with Harvey's FMLA rights.

II.     Retaliation claim

Harvey submits that there is direct evidence contained in the record that Waste Management retaliated against Harvey for engaging in protected activity. As explained above, Harvey suffered from a serious medical condition which necessitated regular treatment over time and resulted in inpatient care at a hospital. Ultimately, the Waste Management terminated Harvey for missing work because Harvey was incapacitated in a hospital. There is no dispute that 1) Harvey appeared for work on March 18 and spoke directly to Sundstrom; and 2) Harvey told Sundstrom that he needed medical attention and Sundstrom concluded that Harvey was unable to perform his job; and 3) Sundstrom was aware that Harvey was admitted into the hospital; and 4) Waste Management considered March 18 as an "unexcused absence" under the Attendance Policy; and 5) Waste Management terminated Harvey's employment for missing work on March 18, 2008.

The FMLA affords employees protection in the event that they are retaliated against because

of their choice to exercise their rights under the FMLA. King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999). There is no genuine issue of material fact that Waste Management terminated Harvey's employment because he missed March 18, 2008 due to his serious medical condition. In addition, Waste Management treated February 13, 2008 as an "unexcused" absence despite the fact that Harvey was on an approved FMLA leave of absence. This day was used to accumulate the 12 points necessary to terminate Harvey's employment.

The fact that the Waste Management terminated Harvey for missing work due to his illness is direct evidence of retaliation. In Lewis v. School District #70, 523 F.3d 730 (7th Cir. 2008), the court discussed direct evidence in the context of a FMLA case. In its decision to replace Lewis as bookkeeper, the employer provided Lewis with a letter which stated, "It was determined that you miss too much work to meet the essential functions of your present assignment." Id. at 742. Also, a supervisor told Lewis that the board of education decided to demote Lewis because of absenteeism. Id. The Seventh Circuit held that these statements were direct evidence of an impermissible motivation for the adverse job action. Id.

The evidence of retaliation is much stronger in the present case. Waste Management terminated Harvey for leaving work early on March 18 to seek medical treatment. The proffered reason for Harvey's discharge is that he violated the Attendance Policy by accumulating 12 points. As discussed above, Waste Management used Harvey's protected activity against him to conclude that Harvey violated the Attendance Policy . If Waste Management did not consider February 13, 2008 and March 18, 2008 as unexcused absences, Harvey would not have accumulated 12 points. Sundstrom did not make a mathematical error in concluding Harvey reached his 12th point because

he verified Harvey's "unexcused absences" with Luby.  Sundstrom also discussed Harvey's prior FMLA leave with Human Resources before the decision was made to terminate Harvey.

In <u>Jordan v. Beltway Rail Company of Chicago</u>, 2009 U.S. Dist. Lexis 16926 N.D. Ill, this court used the direct method of proof to analyze Jordan's retaliation claim under the FMLA.  Under the direct method, the plaintiff must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.  <u>Jordan</u> at 23.  In this case, there is no dispute genuine issue of material fact in dispute.  Harvey engaged in protected activity on February 13 and March 18, 2008; Waste Management terminated Harvey's employment, i.e. material adverse action; and there is a direct causal connection between the FMLA protected days and Harvey's termination.  Accordingly, judgment should be entered in Count II of Harvey's Complaint at Law alleging retaliation in violation of  29 U.S.C. § 2615(a)(1)-(2)

WHEREFORE the Plaintiff, Mitchell Harvey,  respectfully requests this Honorable Court grant his Motion for Summary Judgment on Counts I and II of the Complaint at Law and continue this matter for a trial on damages and reinstatement of employment.

                                           Respectfully submitted,

                                           s/ *Jerome F. Marconi*
                                                 Jerome F. Marconi

Jerome F. Marconi
Law Offices of Jerome F. Marconi
555 W. Jackson Suite 700
Chicago, Illinois 60661
(312) 930-5645
Atty No. 6194239