UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MITCHELL HARVEY,

    Plaintiff,

    v.

WASTE MANAGEMENT OF ILLINOIS, INC.,

    Defendant.

No. 08 CV 6828
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a two-count complaint alleging that Defendant violated the Family Medical Leave Act ("FMLA") by terminating his employment, denying his request for medical leave, and retaliating and discriminating against him. The parties have filed cross-motions for summary judgment. For the following reasons, Plaintiff's motions for summary judgment are granted in part and denied in part. Defendant's motion for summary judgment is denied.

## I. STATEMENT OF FACTS

Plaintiff, Mitchell Harvey ("Harvey"), began working for Defendant, Waste Management of Illinois ("Waste Management"), as a residential driver on October 28, 1994. At the time of his termination, John Luby ("Luby") was Harvey's direct supervisor, Tom Sundstrom ("Sundstrom") was the District Operations Manager who disciplined employees as part of his job duties, and Rod Smith ("Smith") was Harvey's former route manager and supervisor.

Waste Management has a formal attendance policy ("Attendance Policy") which is based on a point system and covers a rolling nine-month period. In accordance with the Attendance Policy, employees were assessed points for unexcused work absences. Pursuant to the

Attendance Policy, an employee should receive a written disciplinary notice at 6 points, a final written notice and one-day suspension from work without pay at 9 points, and would be discharged at 12 points. According to Waste Management's Time Off Planning Service ("TOPS") Program, an employee must contact TOPS to report that he will be absent from work for medical reasons. Once an employee contacted TOPS, that employee's supervisor would be informed of his or her FMLA leave.

Prior to Harvey's termination, on March 7, 2008, Luby and Sundstrom issued Harvey an "Employee Notice of Disciplinary Action" form. The notice stated that Harvey would not receive any further notices before being issued a termination letter. The notice also noted that Harvey had accumulated a total of 11 points. Plaintiff disputes Waste Management's point calculation. Harvey was on Federal Medical Leave Act ("FMLA") leave from February 12, 2008 to March 2, 2008. Plaintiff asserts that Defendant incorrectly included his February 13, 2008 excused absence in their calculation. On March 3, 2008 Harvey was released back to work.

Harvey's last day of employment was March 18, 2008. Harvey arrived to work at approximately 5:40 a.m. Plaintiff spoke to Smith and explained that he did not feel fit to work. Harvey then spoke directly to Sundstrom regarding his illness. Sundstrom testified that he "explained to him [Harvey] that I [Sundstrom] didn't feel that he appeared that he'd be able to do his job and requested that, you know, if- - if he needed to, he needed to leave."

Harvey left work and was admitted to the Northern Illinois Medical Center on March 18, 2008. Both Smith and Sundstrom learned that Plaintiff was hospitalized, however, neither can recall exactly when they learned that Harvey was hospitalized. Jerrie Hanus ("Hanus"), Plaintiff's girlfriend, called Harvey's supervisors on March 18, 2008 to inform them that he was

hospitalized. Hanus testified that on March 18, 2008 both she and Plaintiff left messages for Luby regarding his hospitalization. Furthermore, Hanus testified that on March 19, 2008 she spoke directly to Smith on the telephone to discuss Plaintiff's condition. Smith testified that after learning of Harvey's hospitalization he contacted Sundstrom and informed him of Plaintiff's condition.

Harvey's employment was terminated because his March 18, 2008 absence was considered unexcused and resulted in this 12th and final point under the Attendance Policy. The decision to terminate Harvey was made by Sundstrom, Luby and the Human Resources Department. Sundstrom called Harvey on March 19, 2008 and informed him that his employment had been terminated because of his unexcused absence. Sundstrom admitted that he knew that Harvey was in the hospital when he called end Harvey's employment.

On March 20, 2008, Plaintiff filed a grievance with Waste Management contesting his termination. In his grievance, Plaintiff asserted that his March 18th absence should have been considered FMLA leave.

On April 9, 2008 Dr. Tomlin diagnosed Plaintiff with Adrenal Insufficiency or Addison's Disease, a condition which is managed with medication. Symptoms of Addison's Disease include fatigue, general weakness, low blood pressure with light-headedness, nausea and vomiting. Dr. Tomlin testified that the symptoms that Plaintiff exhibited in February 2008 were different than the symptoms he exhibited in April 2008. Dr. Tomlin testified that he did not believe that Plaintiff could work as of April 9, 2008. Dr. Tomlin had no knowledge regarding whether Plaintiff could have worked after April 30, 2008.

Plaintiff was subsequently referred to Dr. Grindstaff, a neurologist, for an unrelated back condition. In May 2008, Dr. Grinsdstaff diagnosed Plaintiff with lumbosacral radiculopathy (i.e., irritated nerve roots in the spine) and carpal tunnel syndrome in his wrists. Dr. Grindstaff further testified that as of May 15, 2008, Plaintiff could not or should not do any work with an extensive amount of heavy lifting, turning or bending. Dr. Grindstaff did not see Plaintiff between May 2008 and February 2009. On February 11, 2009, Dr. Grindstaff suspected that Plaintiff's spine disease had progressed and recommended that Plaintiff not perform jobs that required heavy lifting, turning or bending. Dr. Grindstaff testified that a degenerative back condition's symptoms can be alleviated, though not cured, through medication or physical therapy. Dr. Grindstaff also testified that a person with degenerative disc disease can exhibit no symptoms. Plaintiff has testified that he is fully released to work on a full-time basis.

**II. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

**III. DISCUSSION**

        <u>A. Plaintiff is Entitled to Summary Judgment on Count I</u>.

        Under the FMLA, an eligible employee, suffering from a serious health condition that renders him unable to perform the function of his position, is entitled to up to twelve work-weeks of leave during each twelve-month period. 29. U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). It is unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights. *Id*. at § 2615(a)(1). A plaintiff is entitled to judgment on an entitlement theory of recovery when: (1) he was eligible for the FMLA's protection; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). Here, there is no dispute as to the first three elements. The parties disagree as to whether Plaintiff provided sufficient notice of his intent to take leave, and whether he was entitled to FMLA benefits.

        An employer can receive direct or constructive notice of an employee's need for FMLA benefits. When the need for leave is not known in advance, "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Under these circumstances, "[i]t is expected that an employee will give notice to the employer within no more than one or two

5

working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.* In *Stevenson v. Hyre Elec. Co.*, the Seventh Circuit noted that:

> the notice requirement is not demanding: The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave. Once that is done, then it becomes 'the employer's duty to request such information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement.

505 F.3d at 724-25 (7th Cir. 2007) (citing *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)). The notice requirement, although "not overly formalized [] must succeed in alerting the employer to the seriousness of the health condition." *Id*. at 725. For example, in *Aubuchon*, the Court held that an employee informing his employer that he needed to leave work because his wife was pregnant was insufficient to qualify as notice pursuant to the FMLA *Aubuchon*, 359 F.3d at 953. However, had the employee added that his wife was having "complications," that "would have sufficed." *Id.* Likewise, it is insufficient for an employee merely to inform an employer that he is "sick" because it does not suggest the seriousness of the condition to the employer. *Collins v. NTN-Bower Corp*., 272 F.3d 1006, 1008-09 (7th Cir. 2001).

In *Byrne v. Avon Products, Inc.*, the Seventh Circuit recognized that an employer may receive constructive notice of an employee's need for FMLA leave through clear abnormalities such as a "dramatic change in behavior." 328 F.3d 379, 381-82 (7th Cir. 2003). "It is enough under the FMLA if the employer knows of the employee's need for leave, the employee need not mention the statute or demand its benefits." *Id*. at 382.

6

Defendant argues that Plaintiff failed to provide appropriate notice for his FMLA leave. I disagree. While Defendant contends that Plaintiff merely informed Sundstrom that he was sick, Sundstrom admits in his deposition that Harvey was visibly ill and that he (Sundstrom) even suggested that Harvey leave work. Furthermore, Hanus, Plaintiff's girlfriend, informed Harvey's supervisors that he was hospitalized. Hanus testified that on March 18, 2008, both she and Plaintiff left messages for Luby regarding his hospitalization. Furthermore, Hanus testified that on March 19, 2008 she spoke directly to Smith on the telephone to discuss Plaintiff's condition. Smith recalls being informed of Harvey's hospitalization and passed that information on to Sundstrom. Sundstrom testified that when he called Plaintiff on March 19 to terminate his employment he knew that Harvey was in the hospital.

According to the FMLA, a serious health condition is "an illness, injury, impairment, or physical or mental condition that involves [] inpatient care in a hospital." 29 U.S.C. § 2611(11). On March 18, both Smith and Sundstrom knew that Plaintiff was ill and needed to leave work early. Sundstrom even testified that Plaintiff appeared to have trouble standing. Furthermore, Smith and Sundstrom were both aware of Plaintiff's hospitalization on March 19, 2008. I find that these facts are sufficient to constitute constructive notice of FMLA leave. Accordingly, Defendant's duty to request information from Plaintiff's doctor was triggered so as to confirm Plaintiff's entitlement to FMLA benefits.

Defendant argues that Plaintiff did not give proper notice to Defendant when he failed to comply with Waste Management's "usual and customary notice" requirement, specifically that he failed to contact TOPS. While the parties dispute whether or not Plaintiff followed the proper procedure, that fact is immaterial. Pursuant to Department of Labor regulations:

> An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. ***However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice***."

29 C.F.R. § 825.302 (d) (emphasis added).

Here, Plaintiff did not fail to inform his employer about his medical condition. Not only did he contact his supervisors via voicemail, but he personally spoke with Sundstrom on March 18. Furthermore, Plaintiff took affirmative steps to keep his employer informed as to his medical condition. As I have found that Plaintiff gave Defendant constructive notice of his intent to take FMLA leave, his failure to follow Waste Management's internal procedures is immaterial. Accordingly, a failure to follow Waste Management's TOPS procedure is insufficient to bar Plaintiff's claim.

Lastly, Defendant argues that Plaintiff fails to establish that he is entitled to the FMLA benefit he claims. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997). The FMLA does not entitle an employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled to had the employee not taken leave." *See* 29 U.S.C. § 2614(a)(3)(B). Accordingly, Defendant argues that if it "would have terminated [Harvey] even if he had not taken FMLA leave, then the employer is not required to restore the employee to his former position." Defendant asserts that Plaintiff's failure to contact TOPS constituted a failure to comply with Waste Management's reasonable policy.

Defendant's argument fails and confuses the issue. I have found that Defendant did receive notice of Plaintiff's request for FMLA leave, without use of the TOPS system. If an employer receives timely notice, the FMLA does not permit an employer to disallow an employee's FMLA leave because of a failure to follow internal employee procedures. Plaintiff's failure to use the TOPS system cannot bar his FMLA leave. As a practical matter, Harvey was terminated on March 19, 2008 for an unexcused absence. On March 20, 2008 Plaintiff grieved his termination asserting that his absence on March 18, 2008 should have fallen under the FMLA. While Defendant implies that Plaintiff should have retroactively utilized the TOPS system to apply for FMLA leave, it is unclear that Plaintiff could have used the TOPS system after March 19, 2008 as he was no longer a Waste Management employee. Instead, Plaintiff challenged his termination, and the classification of his March 18, 2008 absence. The TOPS Program is designed to manage employee absences and notify Waste Management managers of possible FMLA-qualifying absences. I have already determined that Defendant had constructive notice of Plaintiff's FMLA-qualifying absence. Therefore, his use of the TOPS system is immaterial.

Furthermore, the cases relied on by Defendant are inapposite. Defendant discusses *Gilliam v. United States Parcel Serv., Inc.*, where the Court held that even though a supervisor gave an employee FMLA leave, the employer could still terminate the employee when he failed to follow official policy to notify his employer of his anticipated return to work date. 233 F.3d 969, 971-72 (7th Cir. 2000). In *Gilliam*, the granting of FMLA leave did not excuse other policy obligations imposed by the employee. *Id*. at 971-72. The Court reasoned that nothing in the FMLA prevented an employer from enforcing rules requiring employees on FMLA leave to keep

9

employers informed of their plans. *Id*. at 972. Here, Plaintiff was never granted FMLA leave. Moreover, unlike *Gilliam*, Plaintiff made an effort to keep his employer informed of his health and his plans. Likewise, in *Lewis v. Holsum of Fort Wayne, Inc.*, the plaintiff was granted FMLA leave and had a scheduled vacation planned. 278 F.3d 706, 708 (7th Cir. 2002). Plaintiff failed to return to work after the expiration of her vacation and did not contact her company to report that she needed additional time off. *Id*. at 709. Again, the Court relied on the rationale that employees should not keep employers "in the dark" as to when they will return to work. *Id*. at 710.

I have already concluded that Defendants received proper notice of Plaintiff's FMLA absence. Accordingly, I find that Plaintiff was entitled to FMLA benefits without utilizing the TOPS system.

### B. Plaintiff is Not Entitled to Summary Judgment on Count II.

Pursuant to FMLA, it is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). Plaintiff alleges that Waste Management retaliated and discriminated against him by terminating his employment.

A plaintiff may show retaliation through either a direct method, or an indirect method. Under the indirect method, a plaintiff must establish that he: (1) engaged in a statutorily protected activity; (2) was subjected to an adverse employment action; (3) was performing his job in a satisfactory manner; and (4) was treated less favorably than another similarly situated employee who did not engage in such prohibited activity. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Plaintiff has presented no evidence to show that he was treated less

favorably than a similarly situated employee. Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation under the indirect method.

Plaintiff argues that he can show retaliation under the direct method. Defendant summarily asserts that Plaintiff cannot establish the direct method of FMLA retaliation, but reserves the right to file a reply brief on this limited issue. As further briefing is warranted on the issue of showing retaliation through the direct method, I order Defendant to file a reply brief to address this issue.

### C. Defendant Is Not Entitled To Summary Judgment On Plaintiff's Damages Claim.

Defendant asks this Court to grant summary judgment as to all of Plaintiff's claims for damages. Plaintiff requests reinstatement or front pay and back pay, liquidated damages, attorneys' fees and costs, and prejudgment interest. Defendant argues that Plaintiff's deteriorative back condition is permanent and not curable. Therefore Plaintiff would have been unable to work as a residential route driver for Waste Management since May 2008, and remains ineligible for reinstatement. Defendant argues that because Plaintiff has been, and remains, unable to work, reinstatement, and back and front pay are unavailable to him.

Defendant cites to the testimony of Drs. Grindstaff and Tomlin to show that Plaintiff has been, and remains, unable to work. In regard to Plaintiff's current ability to work, Defendant points to Dr. Grindstaff's testimony that as of February 11, 2009, Plaintiff's degenerative disc disease had progressed. At that time, Dr. Grindstaff recommended that Plaintiff not perform jobs that required heavy lifting, turning or bending. Dr. Grindstaff further testified that Plaintiff's back condition was permanent and not "curable." However, Dr. Grindstaff also testified that a degenerative back condition's symptoms can be alleviated, though not cured, through medication

11

or physical therapy. Furthermore, Dr. Grindstaff testified that a person with degenerative disc disease can exhibit no symptoms.

In regard to Plaintiff's inability to work since May 2008, Defendant refers to testimony of Dr. Tomlin. Dr. Tomlin testified that he did not believe that Plaintiff could work as of April 9, 2008. Dr. Tomlin had no knowledge regarding whether Plaintiff could have worked after April 30, 2008. Plaintiff has testified that he is fully released to work on a full-time basis.

I do not find the record to be conclusive regarding the extent to which Plaintiff's injuries would have prevented him from working in the past, and will impact his future employment. I therefore deny Defendant's motion for summary judgment on Plaintiff's damage claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on the issue of FMLA interference is granted. Regarding Plaintiff's claim of retaliation, I order Defendant to file a reply brief addressing the narrow issue of the direct method of proof. Defendant's motion for summary judgment on Plaintiff's damage claims is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: April 29, 2010